UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Cause No. 1:21-CR-77-HAB |
| GREGORY L. THORPE, JR. | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Defendant Gregory Thorpe pleaded guilty to making a materially false and fictitious statement during the attempted purchase of a firearm, in violation of 18 U.S.C. §922(a)(6) and §924(a)(2). During a traffic stop nine months after he committed this offense, one of the firearms Thorpe purchased was recovered in the trunk of his vehicle with over 2 kilograms of fentanyl pills. That conduct led to a greater than double increase in his total offense level under the United States Sentencing Guidelines ("U.S.S.G."), due to application of a cross-reference contained in guideline section 2K2.1(c)(1)(A). (Presentence Investigation Report, "PSR", ECF No. 65). Now before the Court are Thorpe's objections to the PSR. (ECF No. 64). The Court conducted an evidentiary hearing on the objection (ECF No. 87, Evid. Hr'g Tr. at ___). The issues have been fully briefed. (ECF Nos. 88, 89, and 90). As explained below, the Court finds application of the cross-reference to the facts of this case is warranted and overrules the Defendant's objections.

**DISCUSSION**

Thorpe was charged in a three-count indictment with various firearm acquisition offenses. He pleaded guilty to providing false statements to a licensed firearms dealer in connection with the acquisition and attempted acquisition of a firearm on August 4, 2021. The guideline applicable to this offense is U.S.S.G §2K2.1. Under that guideline, the base offense level calculated by the probation

officer was 12, see §2K2.1(a)(7). This base offense level was upwardly increased by 6 levels – 2 levels because the offense involved 3 to 7 firearms (U.S.S.G. §2K2.1(b)(1)(A)) and 4 levels because the Defendant used or possessed any firearm in connection with another felony offense (U.S.S.G §2K2.1(b)(6)). The latter increase applied because one of the firearms Thorpe obtained was located in his vehicle next to a large amount of fentanyl. (PSR ¶ 27). After applying a three-level reduction for acceptance of responsibility to the adjusted base offense level of 18, the corresponding total offense level was 15. But therein lies the rub.

U.S.S.G. §2K2.1(c)(1)(A) directs that if the defendant used or possessed the firearm cited in the underlying offense of conviction in connection with the commission or attempted commission of another offense, the offense level is determined by applying U.S.S.G. §2X1.1 if that offense level is greater than the level for the offense of conviction ("the Cross-Reference"). Here, the probation officer determined that because Thorpe possessed one of the illegally purchased firearms in the commission of the state offense of dealing in a narcotic drug, the base offense level must be determined under U.S.S.G. 2D1.1. Given the weight of the drugs involved in that offense and the possession of a dangerous weapon in connection with the offense (PSR ¶¶s 33-34), Thorpe's adjusted offense level was 34. After application of the acceptance of responsibility decrease, Thorpe's total offense level was 31. (PSR, ¶28).

The difference between the two calculations is stark. With Thorpe's criminal history category of 1, he faces a guidelines range of 18-24 months under the §2K2.1 calculation. Under the total offense level from the Cross-Reference, however, Thorpe's guidelines range increases to 108 to 135 months (capped at 120 months).[1] Understandably then, Thorpe challenges application of the Cross-Reference to his case. He also challenges the application of U.S.S.G. §2K2.1(b)(6)(B) enhancement

---

[1] The range is capped at 120 months because of the statutorily authorized maximum sentence of 10 years which is less than the maximum of the guideline range.

2

in the event the Court determines the Cross-Reference does not apply. After a review of the facts in the PSR and the testimony elicited at the evidentiary hearing, the Court will address the parties' arguments.

### A. Facts

The PSR summarizes the facts relating to Thorpe's acquisition of firearms by means of false and fictitious statements. Beginning in July 2021, FBI Special Agent Sean Skender ("SA Skender") became involved in an investigation after receiving information from a salesclerk at Wrigley Sales, a federal firearms licensee ("FFL"), that an attempted straw purchase was underway. During the course of this investigation, SA Skender identified Thorpe and his girlfriend, Jachelle Maxwell ("Maxwell"), as individuals attempting to purchase firearms. The salesclerk advised SA Skender that Thorpe had been attempting to buy a Glock model 33, .357 and filled out ATF Form 4473 on two consecutive days using two different addresses. Because the first form did not contain an address that matched Thorpe's driver's license, Wrigley Sales would not authorize the purchase. On August 5, 2021, SA Skender met with a salesclerk at ZX Guns, a different FFL. The clerk advised SA Skender that on August 4, 2021, Thorpe attempted to purchase a Romarm Cugir CAI pistol, model Draco, caliber 7.62x39 and a FN pistol, model FNX-45, .45 cal., but his purchase was delayed. Thorpe used one of the unconfirmed addresses on ATF Form 4473 when attempting this purchase. SA Skender later confirmed that Thorpe picked up the above-mentioned firearms from ZX Guns on August 10, 2021. (PSR ¶¶'s 7-22). SA Skender also confirmed that Thorpe was not residing at the address he provided on ATF Form 4473. During his testimony at the evidentiary hearing, SA Skender confirmed the above information. (Evid. Hr'g Tr. 45-54).

The remaining facts elicited at the evidentiary hearing relate to the traffic stop that occurred after the offense of conviction described above. The Court is mindful that the state case against Thorpe remains open and he has not been convicted of any offense associated with this traffic stop.[2]

The Government offered testimony from Officer Michael Murray ("Ofc. Murray") of the Plainfield Police Department in Hendrick's County, Indiana. Ofc. Murray has been employed by the Plainfield Police Department for approximately four years. Ofc. Murray testified that in the early morning on May 4, 2022, he observed a 2013 black Dodge Charger fail to signal a lane change. (Evid. Hr'g Tr. at 6-7). Ofc. Murray conducted a traffic stop on the vehicle and when he approached, he observed a female driver and Thorpe in the passenger's seat. During the stop, Thorpe told Ofc. Murray that he had been stopped earlier that evening by law enforcement. As Ofc. Murray questioned Thorpe and the driver, Thorpe appeared nervous and the two provided inconsistent answers to questions about where they had been. While talking with Thorpe, Ofc. Murray observed an FN Five-seveN® handgun at his feet. (*Id.* at 9). Ofc. Murray also smelled the odor of marijuana emanating from the vehicle. (*Id.*). Given these circumstances, Ofc. Murray believed probable cause to search the vehicle existed and called for backup.

At some point during the stop, Ofc. Murray learned that the stop earlier in the evening was conducted by Cody Rusher ("Ofc. Rusher") of the Hendrick's County Sheriff's Department and he spoke with Ofc. Rusher. (Evid. Hr'g. at 11). The Government offered Ofc. Rusher's bodycam footage from this earlier stop. (Gov't Ex. 1). During that stop, the FN Five-seveN® handgun was on the front passenger seat floorboard and the Draco AK pistol was in the back seat. There has been no dispute

---

[2] Given the pending state matter, the Court initially delayed Thorpe's sentencing while the state case played out. Unfortunately, for logistical reasons the Hendrick's County court would not proceed on the case while the Defendant is in federal custody. Accordingly, the parties agreed to move forward with the evidentiary hearing to resolve the federal case.

4

that the Dodge Charger stopped by Ofc. Rusher and Ofc. Murray is the same Dodge Charger in both stops.[3]

During the search of the vehicle, Ofc. Murray secured the FN Five-seveN® handgun from the front passenger seat floorboard. In the trunk, approximately 2.9 kilograms of fentanyl pills were found in a white and black shoebox. (Gov't Ex. 5). To the left of the shoebox was a AK47 Draco AR pistol. (Evid. Hr'g at 16). Although there were other items in the trunk, Ofc. Murray testified he could see both the shoebox and the firearm without moving anything in the trunk. On Thorpe's person, Ofc. Murray recovered $2,950.00.

The serial number of the Draco AK pistol found in Thorpe's vehicle at the time of his arrest is the same as the pistol purchased from ZX Guns on August 4, 2021, and picked up on August 10, 2021. (Evid. Hr'g Tr. at 50-51). DNA consistent with Thorpe's DNA was located on both firearms. (Gov't Ex. 7). The suspected fentanyl pills were submitted for testing and confirmed to contain fentanyl. (Gov't Ex. 8).

**B. Analysis**

Section 2K2.1(c) contains a cross-reference providing that "[i]f the defendant used or possessed any firearm ... in connection with the commission or attempted commission of another offense," then the court is to "apply ... § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater." *Id.* § 2K2.1(c)(1)(A). Section 2X1.1, then, instructs courts to impose "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* § 2X1.1(a); *see id.* § 2X1.1 cmt. n.2. Under Application Note 14(B)(ii)

---

[3] A screenshot from Ofc. Rusher's body cam showed a box in the trunk. (Gov't Ex. 4). Ofc. Murray testified that the box in the trunk at the time of Ofc. Rusher's stop was not in the trunk when he searched the trunk during the second stop. (Evid. Hr'g at 17).

5

to USSG § 2K2.1, when the other offense is "a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia[,] ... application of subsection[ ] ... (c)(1) is warranted because the presence of the firearm has the potential of facilitating another ... offense." Application Note 14(C) to USSG § 2K2.1 further explains that "another offense" means "any federal, state, or local offense ... regardless of whether a criminal charge was brought, or a conviction obtained."

In determining Thorpe's guidelines range, the probation officer relied on the facts of the May 2022 traffic stop where one of the firearms he illegally acquired was in close proximity to a shoebox filled with fentanyl pills. Based on that information, the probation officer applied the Cross-Reference under U.S.S.G. § 2K2.1(c)(1)(A) to U.S.S.G. § 2X1.1, which resulted in the application of U.S.S.G. § 2D1.1, the Guideline addressing drug-trafficking offenses. Defendant objects to this application of the Cross-Reference arguing that its application places a substantial penalty upon Thorpe for conduct that remains pending in a state court action. He also argues that the Court should question the credibility of Ofc. Murray's testimony given his inexperience as a police officer. Finally, Thorpe argues that application of the Cross-Reference impermissibly directs the court to seek out a higher offense level than the one applicable to the offense conduct itself. Each argument is addressed below.

Thorpe first contends that application of the Cross-Reference impermissibly increases his sentence for conduct outside the offense of conviction. While this is certainly true, the use of relevant conduct outside that necessary for a conviction is nothing new in the sentencing guidelines regime. *See United States v. Anderson*, 517 F.3d 953, 963 (7th Cir. 2008) ("It is well settled that the sentencing judge may consider not only the conduct that formed the basis of the conviction but also "relevant conduct.") (citing U.S.S.G. § 1B1.3). And, in *United States v. Jones*, 313 F.3d 1019, 1021–22 (7th Cir. 2002), the Seventh Circuit concluded that the relevant conduct provision at § 1B1.3 governs

6

application of the cross-reference in § 2K2.1(c). In determining whether subsection (c)(1) applies, a court must "consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles, *See* § 1B1.3(a)(1)–(4) and accompanying commentary." §2K2.1, Application Note 14(E); *see also* U.S.S.G. § 1B1.3(a) (instructing courts to consider all "relevant conduct" in determining the base offense level, specific offense characteristics, and cross reference adjustments). Thus, application of the cross-reference is appropriate if the other offense constitutes relevant conduct under the Guidelines.

Here, while Thorpe challenges the use of the cross-reference to increase his sentence, what he does not challenge is that the "other offense" constitutes relevant conduct under the Guidelines. And for good reason. U.S.S.G. §2K2.1, Application Note 14(E)(i) contains an example of when an "other offense" constitutes relevant conduct:

> Defendant A's offense of conviction is for unlawfully possessing a shotgun on October 15. The court determines that, on the preceding February 10, Defendant A used the shotgun in connection with a robbery. Ordinarily, under these circumstances, subsection (b)(6)(B) applies, and the cross reference in subsection (c)(1) also applies if it results in a greater offense level.

The facts of this case fit this example and confirm that the Defendant's possession of the same firearm he illegally purchased in a later drug offense constitutes relevant conduct. Accordingly, the Court finds application of the Cross-Reference to be an appropriate consideration in this case.

Next, Thorpe takes issue with the credibility of Ofc. Murray at the evidentiary hearing to establish the facts of the "other offense." He argues that at the time of the stop Ofc. Murray had only been out of the Law Enforcement Academy a little over a year and that the Court should be skeptical of his observations. For instance, he argues that Ofc. Murray testified that he smelled the odor of marijuana but there was no evidence of any marijuana in the vehicle. He believes this absence of corroboration undermines Ofc. Murray's testimony of what he observed during the traffic stop. He

also argues that Ofc. Murray's characterization of Thorpe's "overtly nervous behavior" should not be given any weight given his inexperience.

Having had the opportunity to view the demeanor, testimony, and mannerisms of Ofc. Murray, the Court finds that he was a credible and reliable witness. Ofc. Murray testified that during the stop Thorpe appeared nervous to him, he smelled the odor of marijuana coming from inside the vehicle, and he received inconsistent answers from Thorpe and the driver in response to his questions. True, a suspect's demeanor is a subjective observation, and no marijuana was recovered on Thorpe or from the vehicle. But the Court does not find these factors particularly persuasive especially given the common-sense explanations that could have informed Ofc. Murray's observations. The odor of burning marijuana can linger in clothes, fabric, or even the air. Thorpe may have appeared nervous because he had two firearms in his vehicle and, contrary to the first stop, he had over 2 kilograms of fentanyl pills in the trunk. And when asked questions, Ofc. Murray received inconsistent answers. Further, Ofc. Murray took the additional step of contacting Ofc. Rusher to learn additional information about the stop earlier in the evening. All of these factors, along with his presentation during his testimony, leads the Court to conclude he was a reliable and credible witness.

With the above arguments rejected, the Court finds by a preponderance of the evidence that Thorpe committed "another offense," which is defined in Application Note 14(C) as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1 n.14(C). The testimony from Ofc. Murray at the evidentiary hearing established that Thorpe possessed one of the illegally purchased firearms in connection with a drug dealing offense. There is no question the firearm was located in the trunk next to a shoebox filled with fentanyl pills. As the Application Notes acknowledge firearms found in close proximity to drugs warrant application of the

Cross-Reference because "the presence of the firearm has the potential of facilitating another ... offense." Numerous cases have recognized that connection as well, holding that "'[t]he seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation.'" *United States v. Meece,* 580 F.3d 616, 621 (7th Cir.2009), quoting *United States v. Markovitch,* 442 F.3d 1029, 1032 (7th Cir.2006). Based on the evidence, the Court finds that Thorpe committed the "other offense" of dealing in narcotic drugs and possessed the firearm in connection with that offense.

Finally, Thorpe points out that the Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 88 (1986), was critical of cases in which a sentencing factor outweighs the charged offense conduct and cautioned against permitting a sentence enhancement to be the "tail which wags the dog." There are two problems with this argument. *McMillan* was not a case involving the sentencing guidelines and, in any event, it has been overruled. *See United States v. Haymond*, 588 U.S. 634 (2019).

Secondly, the Seventh Circuit directly addressed Thorpe's argument in *United States v. Harper*, 766 F.3d 741, 746 (7th Cir. 2014). There, the defendant argued that § 2K2.1 violates the Fifth and Sixth Amendments because it instructs the court to seek out higher offense levels than necessitated for a crime. The Seventh Circuit rejected this argument, writing:

> Harper presents no support for this sweeping argument. He cites to caselaw holding that an increase in the applicable penalty for a crime is an element that must be submitted to a jury and found beyond a reasonable doubt, but this enhancement does not increase the statutory penalty applicable to the offense so that caselaw is irrelevant. Nor is the Guidelines provision arbitrary. The Sentencing Commission could properly determine that the possession of a firearm by a felon in the context of another offense such as drug trafficking is inherently more dangerous than mere possession absent such activity, and that such a pairing elevates the danger of such firearm being actually used. Accordingly, the Sentencing Commission could properly determine that a higher offense level is warranted in such a circumstance. The requirement that the district court employ the higher offense level in calculating the Guidelines range reflects that recognition, but the district court of course has the discretion to impose whatever

> sentence it determines to be appropriate in consideration of the factors set forth in 18 U.S.C. § 3553(a). Harper has failed to present any cogent argument that this provision is violative of the Fifth or Sixth Amendments.

*Harper*, 766 F.3d at 747.

*Harper* also recognized, however, the "potential for § 2K2.1 to sweep within its reach wide-ranging offenses that may be connected only tenuously." The Court noted, however, that the Sentencing Commission amended[4] the guidelines to "eliminate[] the incorporation of offenses that involved a firearm other than the firearm used in the offense of conviction, and clarifies that courts must consider the relationship between the offense of conviction and the other offense consistent with relevant conduct principles." U.S.S.G. § 2K2.1 Application Note 14(E). Believing that "the limitations of the relevant conduct consideration will protect against some of the feared abuse," the Court concluded that Harper raised no meritorious challenge to his sentence. The same is true in this case. The firearm offense involved the illegal acquisition of the firearm and that very weapon was later located in the trunk of Thorpe's car in connection with a drug trafficking offense. *See United States v. Galvan,* 44 F.4th 1008 (7th Cir. 2022) (applying §2K2.1 cross-reference to defendant who pled guilty to possession of a handgun as an alien under §922(g)(5) for robbery committed with the same handgun). As the Court determined above, the application of the Cross-Reference was appropriately applied. The Defendant's objections to the PSR related to the Cross-Reference are therefore, OVERRULED. Similarly, the Defendant's objection to application of the enhancement under U.S.S.G. §2K2.1(b)(6)(B) is also OVERRULED, U.S.S.G. §2K2.1, Application Note 14(E)(i).

## **CONCLUSION**

---

[4] At the time of the *Harper* decision, the amendment had only been proposed. It has since been adopted and appears as Application Note 14(E) to § 2K2.1.

Based on the above, the Defendant's objection to revised draft presentence report are OVERRULED. (ECF No. 64).[5] Sentencing will be set by separate entry.

SO ORDERED on November 26, 2024.

                                              s/ Holly A. Brady
                                              CHIEF JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT

---

[5] The Court ruled on the Defendant's other objections at a telephonic status and sentencing conference held on August 24, 2023.(ECF No. 69).